UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THOMAS L. ADAMS,

                Petitioner,

v.                                        Case No. 3:17-cv-509-J-39MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

                Respondents.

_____

## **ORDER**

### I. Introduction

Petitioner, Thomas L. Adams, proceeding pro se, challenges his state court (Clay County) judgment of conviction for attempted sexual battery of a child under twelve, following entry of a guilty plea. See Doc. 22-2 at 13.[1] In his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1; Petition), Petitioner raises three grounds: (1) the ineffective assistance of counsel for failing to investigate possible defenses; (2) the ineffective assistance of counsel for failing to advise Petitioner of the consequences of his plea; and (3) the denial of due process and effective assistance of counsel when counsel denied Petitioner's request to proceed to trial. See Petition at 4, 5, 7. Respondents

---

[1] Page numbers referenced throughout this order are those assigned by the Court's electronic document numbering system, including exhibits (Docs. 22-1, 22-2, and 22-3). The Court will cite the exhibits by reference to the document number followed by the page number (i.e., Doc. __ at __).

filed a response (Doc. 22; Resp.), and Petitioner replied (Doc. 30; Reply).

## II. Timeliness & Exhaustion

Respondents concede Petitioner timely filed his Petition and exhausted all grounds for relief. See Resp. at 11, 14. Thus, the Court accepts as undisputed that the claims are timely and exhausted.

## III. Applicable Standards

### A. Habeas Review

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus and "prescribes a deferential framework for evaluating issues previously decided in state court," Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020), limiting a federal court's authority to award habeas relief. See 28 U.S.C. § 2254; see also Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

When a state court has adjudicated a petitioner's claim on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). See also Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1300-01 (11th Cir. 2019), cert. denied, No. 19-6918, 2020 WL 1325907 (U.S. Mar. 23, 2020). The burden of proof is high; "clear error will not suffice." Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017).

A federal district court must give appropriate deference to a state court decision on the merits. Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The state court need not issue an opinion explaining its rationale for its decision to qualify as an adjudication on the merits. Id. Where the state court's adjudication is unaccompanied by an explanation, the district court should presume the unexplained decision adopted the reasoning of the lower court:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Id.

To obtain habeas relief, the state court decision must unquestionably conflict with Supreme Court precedent, not dicta. Harrington v. Richter, 562 U.S. 86, 102 (2011). If some fair-minded jurists could agree with the state court's decision, habeas relief must be denied. Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1351 (11th Cir. 2019), cert. denied, 140 S. Ct. 394 (2019). Therefore, unless the petitioner shows the state court's ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement, there is no entitlement to habeas relief. Burt v. Titlow, 571 U.S. 12, 19-20 (2013). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The AEDPA standard is intended to be difficult for a petitioner to meet. Harrington, 562 U.S. at 102. A district court's obligation is to "train its attention" on the legal and factual basis for the state court's ruling, not to "flyspeck the state court order or grade it." Meders, 911 F.3d at 1349 (citing Wilson, 138 S. Ct. at 1191-92).

## B. Ineffective Assistance of Counsel

To demonstrate trial counsel was ineffective, a habeas petitioner must satisfy a rigorous two-prong test by showing (1) counsel's performance was deficient, meaning it fell below an

4

objective standard of reasonableness, and (2) counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984). Restated, a criminal defendant's Sixth Amendment right to effective assistance of counsel "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland, 466 U.S. at 687). The prejudice prong requires a showing that there is a reasonable probability that, but for counsel's deficiencies, the result of the proceeding would have been different. Strickland, 466 U.S. at 695.

The two-prong Strickland test applies when a petitioner challenges his counsel's performance with respect to the entry of a guilty plea such that a petitioner still must demonstrate counsel's performance was deficient. Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). To establish prejudice, however, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth

5

Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)).

When a petitioner claims his counsel was ineffective, "[r]eviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). When the "strong presumption" standard of Strickland is applied "in tandem" with the highly deferential AEDPA standard, a review of the state court's determination as to the "performance" prong is afforded double deference. Richter, 562 U.S. at 105.

Accordingly, the question for a federal court is not whether trial counsel's performance was reasonable, but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," a federal court may not disturb a state-court decision denying the claim. Id. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## IV. Analysis

### A. Ground One

In ground one, Petitioner asserts his privately retained counsel, Theodore Zentner, was ineffective by failing to investigate possible defenses. See Petition at 4. Petitioner contends he told Zentner of a woman who was willing to testify that the victim was known to "make up stories all the time" and had gotten in trouble at school for lying about having had sex with two class mates, one of whom got the victim pregnant. Id. Despite Petitioner identifying a potential favorable witness, Petitioner asserts Zentner did not follow up or investigate. Petitioner also asserts Zentner "rejected Petitioner's grandson," who testified at deposition that Petitioner did not abuse the victim, who is the grandson's sister. Id. Petitioner contends Zentner's performance deprived him of the right to prove his innocence at trial. Id. Petitioner claims the witnesses "could have put doubt in the minds of a jury." Id. See also Reply at 4-5.

Petitioner raised this claim as ground one in his amended motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Doc. 22-2 at 55. Florida's First District Court of Appeal (First DCA) affirmed without opinion and issued its mandate. Doc. 22-3 at 5, 7. To the extent the First

DCA affirmed the postconviction court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. See Wilson, 138 S. Ct. at 1194. As such, the Court will "look through" the unexplained opinion to the postconviction court's order on Petitioner's Rule 3.850 Motion. Id.[2]

The postconviction court found Petitioner waived his right to present a defense when he entered his guilty plea in open court. Doc. 22-2 at 130. The postconviction court found the following:

> During the plea hearing, [Petitioner] testified that he had an opportunity to speak with his counsel about the facts of this case and the possible defenses he may have had. (Ex. C at 5.) [Petitioner] agreed that he and counsel had "a number of conversations" about this case and "how to proceed." (Ex. C at 5-6.) [Petitioner] testified that counsel answered all the questions he had and counsel had done everything that [Petitioner] asked counsel to do. (Ex. C at 12.) [Petitioner] was satisfied with counsel's services and there was not anything that [Petitioner] believed counsel should have done that counsel had not done. (Ex. C at 12-13.) Further, after being questioned as to whether he had enough time to think about how he wanted to proceed, [Petitioner] stated that he felt the plea was the "best thing at the current time" and the plea was the way he wanted to go. (Ex. C at 12.)

---

[2] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

Id. The postconviction court's factual findings are presumed correct because Petitioner has not overcome the presumption with clear and convincing evidence. See 28 U.S.C. § 2254(e).

The state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. In its order denying Petitioner's Rule 3.850 Motion, the postconviction court set forth the applicable two-prong Strickland test and recognized the nuances of the prejudice-prong analysis in the context of a guilty plea. Doc. 22-2 at 129. Upon review, Petitioner is unable to establish the Florida court's decision is inconsistent with Supreme Court precedent, including Strickland and Hill, or is based on an unreasonable determination of the facts. Accordingly, under the doubly deferential AEDPA/Strickland standard, Petitioner is not entitled to habeas relief on ground one.

**B. Ground Two**

In ground two, Petitioner asserts Zentner was ineffective for failing to advise him of the consequences of his plea. See Petition at 5-6. Specifically, Petitioner says Zentner did not explain Petitioner would be designated a sexual predator; would not be allowed to see his grandchildren who were under the age of eighteen; could lose his retirement benefits; and would have to

9

complete five years of sex offender probation. Id. at 6. Petitioner
alleges he construed Zentner's characterization, to the trial
judge, that his plea was "one of convenience" to mean he was
pleading "not guilty." Id. Petitioner contends, if he had known
all the consequences of his plea, he would have insisted on going
to trial. Id. Petitioner also says, however, that he pleaded guilty
"to try to save his family from having to go through a trial."[3]
Id. See also Reply at 5-6.

Petitioner raised this claim as ground two in his Rule 3.850
Motion. Doc. 22-2 at 57. The First DCA affirmed without opinion.
Doc. 22-3 at 5. To the extent the First DCA affirmed the
postconviction court's denial on the merits, the Court will address
the claim in accordance with the deferential standard for federal
court review of state court adjudications. See Wilson, 138 S. Ct.
at 1194. As such, the Court will "look through" the unexplained
opinion to the postconviction court's order on Petitioner's Rule
3.850 Motion. Id.

The postconviction court found Petitioner failed to
demonstrate Zentner's "performance was deficient or that there was
a reasonable probability that but for [the] alleged errors,

---

[3] Petitioner questions the veracity of the plea hearing
transcript. See Petition at 6. The Court already considered and
rejected Petitioner's objection to the transcript. See Order (Doc.
31).

[Petitioner] would have insisted on going to trial." Doc. 22-2 at

132. The postconviction court made the following findings, which

are presumed correct:

> [Petitioner] signed a plea agreement form that
> expressly stated that he would be designated
> a sexual predator and that the State and
> defense would recommend five years of Sex
> Offender probation. (Ex. A at 1-2.) During the
> plea hearing, [Petitioner] testified that he
> had reviewed and discussed the plea agreement
> form with counsel. (Ex. C at 8.) Counsel, in
> the presence of [Petitioner], also informed
> that [sic] Court about the joint
> recommendation by the State and the defense
> that included the sentence of five years of
> Sex Offender probation and the sexual predator
> designation. (Ex. C at 4.) Further, the Court
> advised [Petitioner] that [he] would receive
> the sexual predator designation. (Ex. C at 9.)

> The plea agreement form also indicated
> that [Petitioner] would have no intentional
> unsupervised contact with any child under the
> age of eighteen without prior approval of the
> Court. (Ex. A at 2.) [Petitioner] acknowledged
> that the plea agreement provided that he would
> not have contact with any children. (Ex. C at
> 11.) Further, [Petitioner] understood that the
> no contact provision included no contact with
> his grandchildren. (Ex. C at 11.)

Id. at 131-32. As to Petitioner's loss of retirement benefits, the

postconviction court found Zentner had no duty to advise Petitioner

of such a possibility because "the law generally does not require

a defendant to be informed of collateral consequences." Id. at

132.

The state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. In its order denying Petitioner's Rule 3.850 Motion, the postconviction court set forth the applicable two-prong Strickland test and recognized the nuances of the prejudice prong analysis in the context of a guilty plea. Id. at 129. Upon review, Petitioner is unable to establish the Florida court's decision is inconsistent with Supreme Court precedent, including Strickland and Hill, or is based on an unreasonable determination of the facts. The record demonstrates the trial court properly applied the Strickland standard and found no deficient performance on the part of counsel and no prejudice to Petitioner's defense. Accordingly, under the doubly deferential AEDPA/Strickland standard, Petitioner is not entitled to habeas relief on ground two.

### C. Ground Three

In ground three, Petitioner argues his plea was involuntary. He asserts he was "denied his right to due process and effective assistance of counsel . . . when counsel denied [his] request to go to trial." Petition at 7. Petitioner contends Zentner told him his sentence would likely be two years with no sexual offender designation, but four days before trial, Petitioner found out "none

of this was true."[4] Id. at 8. And four days before trial, Zentner

allegedly told Petitioner that Zentner "would not be calling any

witnesses, and that Petitioner would have to come up with another

$1000 dollars [sic] or [Zentner] would not go to trial." Id. at 7.

Petitioner alleges he had no choice but to accept the plea

agreement. Petitioner maintains he was "robbed" of his opportunity

to prove his innocence at trial. Id. Petitioner says he wrote a

letter to the trial judge asking the judge to appoint the public

defender to represent him because of the "disharmony in the

relationship" between him and Zentner, his privately retained

counsel. Id. The judge did not address Petitioner's request.[5] Id.

See also Reply at 7-9.

---

[4] The State originally charged Petitioner, by Information
dated June 4, 2013, with two counts of sexual battery and one count
of lewd or lascivious molestation. Doc. 22-1 at 3. The capital
sexual battery charges carried a mandatory life sentence without
parole. Id. at 29. On the original Information, Petitioner entered
a plea of not guilty. Id. at 8. On September 9, 2015, the State
entered an Amended Information charging Petitioner with two counts
of attempted capital sexual battery, each of which is punishable
by up to thirty years in prison. Id. at 14, 29. The next day,
Petitioner signed a plea deal and tendered his plea in open court.
Id. at 16, 24. Trial had been set to begin the following week.
Doc. 22-2 at 116-17.

[5] Plaintiff wrote a letter to the judge on March 5, 2014. Doc.
22-2 at 192. Plaintiff said he paid Zentner his "life savings,"
but Zentner had done nothing on his case. Plaintiff was frustrated
because neither he nor his wife were able to contact Zentner by
phone, he was unable to afford to hire a new attorney, and he was
unsure what to do. Id. Petitioner asked the judge what he could do
with his case. He said, "If nothing else, may I please be assigned

Petitioner raised this claim in ground three of his Rule 3.850 Motion. Doc. 22-2 at 59. The First DCA affirmed without opinion. Doc. 22-3 at 5. To the extent the First DCA affirmed the postconviction court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. See Wilson, 138 S. Ct. at 1194. As such, the Court will "look through" the unexplained opinion to the postconviction court's order on Petitioner's Rule 3.850 Motion. Id.

The postconviction court found Petitioner's plea was voluntarily entered and made the following findings, which are presumed correct:

> As previously discussed, [Petitioner] stated that he felt the plea was the "best thing at the current time" and the plea was the "way he wanted to go." (Ex. C at 12.) [Petitioner] had discussed his case thoroughly with his counsel, counsel answered all the questions [Petitioner] had, and counsel had done everything that [Petitioner] had asked counsel to do. (Ex. C at 12.) [Petitioner] was satisfied with counsel's services, and there was not anything that [Petitioner] believed counsel should have done that counsel had not done. (Ex. C at 12-13.) Moreover, [Petitioner] testified that he was not threatened or coerced into entering his plea. (Ex. C at 11-12.)

---

[the public defender]." Id. The receipt of the letter is noted on the court's docket. Doc. 22-1 at 11.

Doc. 22-2 at 133.

Petitioner fails to demonstrate the state court's adjudication of the claim was contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. Accordingly, under AEDPA's deferential standard, Petitioner is not entitled to habeas relief on ground three.

Even if the state court's adjudication of this claim were not entitled to deference, Petitioner is not entitled to relief. By signing the plea agreement, Petitioner agreed he entered the plea freely and voluntarily and was waiving his right to proceed to trial and to present and confront witnesses. Doc. 22-1 at 19, 21. He agreed:

> I consider this negotiated sentence to be to my advantage, and I have freely and voluntarily entered my plea of guilty. I have not been offered any hope of reward, better treatment, or certain type of sentence as an inducement to enter this plea, other than the sentence set forth above. I have not been promised by anyone, including my attorney, that I would actually serve any less time than that set forth above, and I understand that any early release of any sort is not a part of this plea agreement and is entirely within the discretion of government agencies other than this Court. I have not been threatened, coerced, or intimidated by any person, including my attorney, in any way in order to get me to enter this plea.

Id. at 19-20. Petitioner also agreed he had "ample time" to discuss the plea agreement with counsel; his counsel took all actions and spoke to all people Petitioner asked him to or explained why such actions were not done; he was satisfied with his counsel's representation; he had time to consider the plea agreement, the charges against him, and the constitutional rights he was waiving; and he read and understood the plea agreement. Id. at 20-21.

The trial judge signed the plea agreement, certifying he accepted Petitioner's plea in open court after discussing the plea with Petitioner. Id. at 22. The judge found Petitioner understood the terms of the plea agreement and entered his plea freely and voluntarily. Id. During the plea colloquy, Petitioner acknowledged he initialed and signed the plea agreement, which he reviewed and discussed with his attorney; he said he had had an opportunity to "speak with [his] attorney about the facts of [the] case and the possible defenses"; he understood the original charges and amended charges against him and the maximum sentences associated with those charges; he understood the rights he was giving up, including the right to a jury trial; and he understood he would be designated a sexual predator. Doc. 22-2 at 156-62.[6] Before the judge accepted

---

[6] Not only did Petitioner acknowledge he understood he would be designated a sexual predator, he asked the judge whether he would be able to see his grandchildren in the presence of their

Petitioner's plea and adjudicated him guilty, the judge read in open court the details of the plea agreement, including the sexual predator designation, and confirmed Petitioner's plea was voluntarily and freely tendered. The following colloquy, in part, took place:

> THE COURT:    Have you been threatened or coerced into entering this plea?
>
> THE DEFENDANT: No, sir.
>
> THE COURT:    Have you had enough time to think about how you want to proceed?
>
> THE DEFENDANT: I feel this is the best thing at the current time right now to do.
>
> THE COURT:    Okay. So you've thought about it and this is the way you want to go[?]
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT:    Okay. And you've discussed this thoroughly with [your attorney]?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT:    And he's answered all the questions that you've had?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT:    And he's done everything you've asked him to do?
>
> THE DEFENDANT: Yes, sir.

---

parents. Doc. 22-2 at 162. The judge told him the terms of the agreement would prevent such interaction, but that Petitioner could move for modification once he is on probation. Petitioner responded, "All right. Thank you." Id.

> THE COURT:    And you're satisfied with the job he's done for you?
>
> THE DEFENDANT: As best as I can.
>
> THE COURT:    Okay. Well, is there anything that you believe he should have done that he hasn't done?
>
> THE DEFENDANT: I don't know, Your Honor.
>
> THE COURT:    Okay. And I understand you're not happy with the sentence, but other than that, is there anything else that you have asked him to do that he has not done?
>
> THE DEFENDANT: I guess not, no.
>
> THE COURT:    Okay. All right. And are you pleading guilty to these charges because you are, in fact, guilty of these charges?
>
> MR. ZENTNER:   Your Honor, this is a best interest plea.

Id. at 162-64.

A trial judge accepting a criminal defendant's guilty plea must ensure the record demonstrates the defendant enters his plea freely and voluntarily. See Boykin v. Alabama, 395 U.S. 238, 244 (1969) (noting a defendant should have "a full understanding of what the plea connotes and of its consequence").

> When a defendant pleads guilty, he waives a number of constitutional rights, and thus, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers knowingly, intelligently, and

> with sufficient awareness of the relevant
> circumstances and likely consequences."

Hernandez v. Sec'y, Fla. Dep't of Corr., 785 F. App'x 707, 708
(11th Cir. 2019) (quoting United States v. Ruiz, 536 U.S. 622,
628-29 (2002)). A defendant enters a constitutionally valid guilty
plea when "the record accurately reflects that the nature of the
charge and the elements of the crime were explained to the
defendant by his own, competent counsel." Bradshaw v. Stumpf, 545
U.S. 175, 183 (2005).

The record reflects Petitioner entered a constitutionally
valid guilty plea. Not only did he initial and sign a plea
agreement form, which provides his plea was entered "freely and
voluntarily," but he told the judge in open court he discussed
both the plea and his case with Zentner, he understood the nature
of the charges and the rights he was giving up, and he wanted to
enter a guilty plea instead of proceeding to trial, which was set
for the following week.[7] Doc. 22-2 at 156-64. A criminal
defendant's solemn declarations in court carry a strong
presumption of truth. Blackledge v. Allison, 431 U.S. 63, 74
(1977); see also Winthrop-Redin v. United States, 767 F.3d 1210,

---

[7] Even in his Petition, Petitioner states he accepted the plea
deal "to save his family from having to go through a trial," which
contradicts his contention that his plea was not voluntarily
tendered. See Petition at 6.

1217 (11th Cir. 2014) (recognizing statements made under oath at a plea colloquy are presumed true). Thus, Petitioner's representations that he understood the plea agreement and the rights he was giving up "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 73-74.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.    This action is **DISMISSED WITH PREJUDICE**.

3.    The **Clerk** shall enter judgment accordingly and close this case.

4.    If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[8] The **Clerk** shall terminate from the pending motions report any motion to proceed on

---

[8] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.

appeal as a pauper that may be filed in this case. Such termination

shall serve as a denial of the motion.

   **DONE AND ORDERED** at Jacksonville, Florida, this 11th day of

May 2020.

 

 

_____

BRIAN J. DAVIS
United States District Judge

Jax-6
c:   Thomas Adams
      Counsel of record